JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

NEIL J. BARRETT,

Plaintiff,

- against -

D.J. KNIGHT & COMPANY, LTD. D/B/A DJK,
D/B/A DJK RESDIENTIAL, D/B/A DJ KNIGHT
RELOCATION and SIRVA RELOCATION LLC,

Defendants.
-----------------------------------------------------------------x

07 Civ. **07 CIV 7945** ( )( )

NOTICE OF REMOVAL

RECEIVED
SEP 10 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Defendant SIRVA RELOCATION LLC d/b/a DJK and d/b/a DJ KNIGHT

RESIDENTIAL by and through its attorneys, Dombroff Gilmore Jaques & French, hereby gives

notice of the removal of the action filed in the Supreme Court of the State of New York, County

of New York, pursuant to 28 U.S.C. § 1441 *et seq.* and states as follows:

      1.    The plaintiff commenced this action by serving a Summons and Verified

Complaint on SIRVA RELOCATION LLC on or about August 9, 2007. The Summons and

Verified Complaint represents all process, pleadings and orders that SIRVA RELOCATION

LLC has received in this action to date. A true and correct copy is attached hereto as Exhibit

"A."

      2.    This notice is filed in accordance with 28 U.S.C. § 1446(b) and Rule 81(c) of the

Federal Rules of Civil Procedure.

      3.    The above-described action is a civil contract action for alleged breach of

contract, promissory estoppel, and negligence against defendants. The action arises out of the

rental and management of plaintiff's property.

4.    Plaintiff is an individual residing in the City of London and Country of England. (*See* Exhibit A, Plaintiff's Complaint, paragraph 1).

5.    Defendant SIRVA RELOCATION LLC is a single member limited liability company organized under the laws of the state of Delaware.  Its only member is North American Van Lines Inc., which is Delaware corporation.  Accordingly, SIRVA RELOCATION LLC is a resident of Delaware.

6.    SIRVA RELOCATION LLC purchased the assets of D.J. KNIGHT & COMPANY, LTD. in and around September 2004.  In addition, SIRVA RELOCATION LLC purchased the names "DJK" and "DJK RESIDENTIAL" and currently uses these trade names. The acts complained of in the Complaint occurred after September 2004 after SIRVA RELOCATION LLC took over the handling plaintiff's account.  Accordingly, D.J. KNIGHT & COMPANY, LTD. is a nominal defendant and not a real party in interest in this litigation.

7.    The basis of this removal is diversity of citizenship pursuant to 28 U.S.C. § 1332 (a).  SIRVA RELOCATION LLC is a citizen of Delaware and the plaintiff is a citizen of England.  Further, the matter in controversy is in excess of $75,000.  Pursuant to plaintiff's Complaint, plaintiff seeks in excess of $200,000.  Accordingly, this is an action over which this Court has jurisdiction.

8.    A copy of this Notice of Removal will be promptly served upon all other parties and filed with the clerk of Supreme Court of the State of New York, County of New York, in accordance with 28 U.S.C. § 1446(d).

WHEREFORE, defendant SIRVA RELOCATION LLC respectfully gives notice that the action now pending against it in the Supreme Court of the State of New York, County of New York, has been removed therefrom to this Court.

2

Dated: New York, New York
      September 10, 2007

                        DOMBROFF GILMORE JAQUES & FRENCH

                        By: *Karen M. Berberich*
                               Karen M. Berberich (KB 6300)
                        40 Broad Street, Suite 701
                        New York, New York 10004
                        Telephone: (212) 742-8450
                        Facsimile: (212)742-0161
                        Attorneys for Defendant SIRVA RELOCATION
                        LLC d/b/a DJK and d/b/a DJ KNIGHT
                        RESIDENTIAL

TO:    Rosario DeVito, Esq.
        Law Offices of Paul J. Giacomo, Jr.
        405 Lexington Avenue, 37th Floor
        New York, New York 10174
        Telephone: (212) 486-0200
        Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned attorney at law of the State of New York certifies that on September 10,

2007, a true and correct copy of the foregoing Notice of Removal was served via Overnight Mail

on the following named attorney(s):

Rosario DeVito, Esq.
Law Offices of Paul J. Giacomo, Jr.
405 Lexington Avenue, 37th Floor
New York, New York 10174

By: _____
Karen M. Berberich (KB 6300)

A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

COPY

-------------------------------------------------------------------x

NEIL J. BARRETT,

Index No.: ___07/110746___

                 Plaintiff,

**SUMMONS**

   -against-

*Defendant's Principal Office:*
*101 Fifth Avenue, 3rd Floor*
*New York, New York 10003*

D.J. KNIGHT & COMPANY, LTD.
D/B/A DJK, D/B/A DJK RESIDENTIAL
D/B/A DJ KNIGHT RELOCATION and
SIRVA RELOCATION LLC,

*The basis of venue designated is*
*Defendant's Principal Office*

                Defendants.

-------------------------------------------------------------------x

To the above named Defendant(s):

       **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action and to serve a copy of your answer, or, if the complaint is not served with the summons, to serve a notice of appearance, on the Plaintiffs' attorneys within 20 days after the service of this summons, exclusive of the date of service, or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint.

Dated: New York, New York
       July 17, 2004

               THE LAW OFFICES OF PAUL J. GIACOMO, JR.

               By:   Rosario DeVito
               Attorneys for Plaintiff
               405 Lexington Avenue, 37th Floor
               New York, New York 10174

To:    D.J. KNIGHT & COMPANY, LTD.
       D/B/A DJK, D/B/A DJK RESIDENTIAL
       D/B/A DJ KNIGHT RELOCATION and
       SIRVA RELOCATION LLC,
       101 Fifth Avenue, 3rd Floor
       New York, New York 10003

       SIRVA RELOCATION LLC
       c/o Corporation Service Company
       80 State Street
       Albany, New York 12207-2543

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------x

NEIL J. BARRETT,

                  Plaintiff,                         Index No.:   07/110746

         -against-

                                             **VERIFIED COMPLAINT**

D.J. KNIGHT & COMPANY, LTD.
D/B/A DJK, D/B/A DJK RESIDENTIAL
D/B/A DJ KNIGHT RELOCATION and
SIRVA RELOCATION LLC,

                  Defendants.

----------------------------------------------------------------x

        Plaintiff NEIL BARRETT, by and through his attorneys, the Law Offices of Paul J.

Giacomo, Jr., as and for his Verified Complaint against the Defendants D.J. KNIGHT &

COMPANY, LTD. D/B/A DJK D/B/A DJK RESIDENTIAL D/B/A DJ KNIGHT

RELOCATION and SIRVA RELOCATION LLC, alleges as follows:

        1.     Plaintiff NEIL J. BARRETT (hereinafter sometimes "Mr. Barrett") is an

individual residing in the City of London and Country of England. Prior to 2001, Plaintiff was a

resident of the, County of Kings, City and State of New York.

        2.     Upon information and belief, Defendant D.J. KNIGHT & COMPANY, LTD.

D/B/A DJK, D/B/A DJK RESIDENTIAL D/B/A DJ KNIGHT RELOCATION (hereinafter "D.J.

Knight") is a domestic business corporation duly organized and existing pursuant to the laws of

the State of New York, with its principal place of business located at 101 Fifth Avenue, Third

Floor, New York, New York 10003.

        3.     Upon information and belief, Defendant SIRVA RELOCATION LLC (hereinafter

"SIRVA Relocation") is a foreign limited liability company organized and existing under the

laws of the State of Delaware, electing New York County for purposes of venue. Upon

information and belief, Defendant SIRVA Relocation LLC acquired Defendant D.J. Knight in or

around September, 2004.

## FACTS COMMON TO ALL CAUSES OF ACTION

4.    On or about June 5, 2000, Plaintiff NEIL J. BARRETT purchased the

condominium unit located at 2121 Shore Parkway, Apartment 7B, Brooklyn, New York

(hereinafter "the Property").

5.    Prior to 2001, Mr. Barrett and his partner, Jose Florido (hereinafter "Mr. Florido")

resided at the Property.

6.    During the early part of the year 2001, Mr. Barrett was assigned to an overseas

position in London, England by his then employer, Barclays Capital.

7.    Mr. Florido accompanied Mr. Barrett to London, England, thereby leaving the

Property vacant.

8.    Mr. Barrett decided to retain ownership of the Property, however, he did not want

to leave the Property vacant and unattended.

9.    Upon information and belief, Barclays Capital contracted with Defendant D.J.

Knight to assist Mr. Barrett in the management of the Property while the Plaintiff was on

overseas assignment (hereinafter the "Contract"). Pursuant to the Contract, D.J. Knight assigned

a property management coordinator to the Plaintiff, wherein the coordinator became the

Plaintiff's advocate in the rental and management of the Property. Therefore, Plaintiff was an intended third party beneficiary of the Contract.

10.    On March 26, 2001, D.J. Knight sent a letter to Mr. Barrett which stated "thank you for allowing DJ Knight Relocation to assist you in the management of your property during your overseas assignment." Enclosed in the letter was a copy of the Defendant's brochure which outlined the Defendant's duties and responsibilities. Annexed hereto as **Exhibit A** is a copy of the letter dated March 26, 2001, along with a copy of Defendant's brochure.

11.    D.J. Knight promised to act as the Plaintiff's advocate in the rental and management of the Property, resulting in minimal involvement by Mr. Barrett.

12.    D.J. Knight contracted to provide the following management and marketing services:

<blockquote>

a.    Determining the Property's fair market rental value and developing a marketing strategy for securing the optimum tenant for the Property;

b.    Listing the Property for rent with a qualified broker and overseeing each agent's capabilities, personnel and communications;

c.    Establishing contact with all of the Property service providers, including local tax authorities, utility companies, on-site building management and maintenance & service companies;

d.    Selecting tenants;

e.    Inspecting the Property throughout the management process and providing the homeowners with relevant inspection documentation;

f.    Administering ordinary repairs and maintenance;

g.    Coordinating all major or extraordinary repairs (including the selection of a contractor, the monitoring of the work, and the payment of all bills) upon the consent of the Property Owner;

</blockquote>

h.     Paying all relevant property expenses (including mortgage, taxes, insurance) which were sent directly to D.J. Knight; 9) Establishing a monthly rental payment schedule;

i.     Collecting the rental income and subjecting untimely rental payments to late fees;

j.     Providing the owner with relevant financial management documentation, including a monthly and annual Statement of Operations;

k.     Facilitating termination of the lease (at the end of the rental period or at the time of the owners' return); and

l.     Conducting move-out inspections at each tenant's departure.

13.     The Contracted for Tenant Selection Process involved standard and customary credit checks, letter of employment and income verification, and business and personal references.

14.     Upon selection of a tenant and execution of a lease, D.J. Knight was required to send a copy of the executed lease to Mr. Barrett.

15.     D.J. Knight was responsible for physically inspecting the Property at the time of homeowner departure, at the time of tenant move-in, quarterly, at the time of tenant move-out, and at the time of homeowner return.  In addition, D.J. Knight promised that inspections would be performed as needed to maintain the property in good condition.

16.     D.J. Knight was also responsible for providing Mr. Barrett with the aforementioned inspection reports.  These inspection reports were to include full and complete photographic documentation, encompassing the interior and the exterior of the subject property.

17.     Upon information and belief, Defendant SIRVA Relocation acquired Defendant D.J. Knight in or around September, 2004, wherein SIRVA Relocation assumed the duties,

4

responsibilities and obligations of Defendant D.J. Knight.

18.     Defendants were also responsible for marketing the Property and ensuring that the Property did not remain vacant. However, between June of 2005 and January of 2006, the Property remained vacant.

19.     On or about January 15, 2006, Defendant SIRVA Relocation, acting as agent for Mr. Barrett, executed a one-year lease (hereinafter "the Lease") with Mr. Justin Goldstein and Mr. Yan Litvinov (hereinafter "the Tenants") at a yearly rent of $15,000.00. Annexed hereto as **Exhibit B** is a copy of said lease dated January 15, 2006.

20.     Upon information and belief, the Defendants did not follow any of their internal procedures as detailed in the contract under Contracted for Tenant Selection Process, as no credit checks were performed, no letter of employment and income verification was obtained, and no business and personal references were received.

21.     In addition, the Plaintiff did not receive a copy of the executed Lease, as required.

22.     By letter dated February 24, 2006, Mr. Barrett was notified by Advanced Management Services, property managers for the Property, that "certain individuals said to be from unit 7B at 2121 Shore Parkway have been using the fire escapes as a means of gaining access to their apartments." Annexed hereto as **Exhibit C** is a copy of the letter dated February 24, 2006.

23.     In or about March, Mr. Barrett and Mr. Florido were notified via email that there was a further problem with the Property. The Tenants, who purportedly had connections to illegal

5

drug activities, had been the subject of numerous break-ins into the Property via the fire escape. They were also informed that the Tenants had been stabbed at the Property by an unknown assailant, believed to be in connection with their illegal drug activities. Shortly after discharge from the hospital, the Tenants vacated the property.

24.    On March 20, 2006, Mr. Barrett and Mr. Florido received a letter from the Board of Managers (hereinafter "the Board") of their condominium association, the 2121 Shore Condominium, informing them that in leasing the Property to the Tenants, the Defendants failed to comply with the Board Approval requirements as laid out in Article 7 of the By-laws of the 2121 Shore Condominium (hereinafter the "By-laws"). Annexed hereto as **Exhibit D** is a copy of the letter dated March 20, 2006.

25.    In accordance with the By-Laws, the Board was voiding the lease and threatening to institute legal proceedings to eject the Tenants. The Board further threatened to hold Mr. Barrett and Mr. Florido liable for all associated costs and expenses, including but not limited to attorneys' fees, disbursements and court costs.

26.    On April 4, 2006, Ms. Julia Velez of SIRVA Relocation confirmed in an email to Mr. Barrett and Mr. Florido that Board procedures had not been followed. Annexed hereto as **Exhibit E** is a copy of the letter dated March 20, 2006.

27.    While the Tenants were in possession of the Property, they caused extensive damage to the Property.

28.    To repair the damage to the Property, the Plaintiff was required to pay $750.00 to the Defendant SIRVA Relocation. This payment was reimbursement for payment made to the

6

superintendent of the Property, Mr. Napoleon Castro, hired by the Defendant to repair and clean the Property. The Plaintiff was also required to pay $330.15 directly to Advanced Management Services, the managing agent for the Property, for the repair of damages to the Property caused by the Tenants.

29.     Believing the Property had been properly cleaned and repaired, on May 18, 2006, the Plaintiff brought a prospective tenant, who was an old friend and associate of the Plaintiff, to the Property. The locks had been changed to prevent further entrance by the Tenants and the superintendent arrived to let the Plaintiff into the Property.

30.     The Plaintiff was horrified to find that the Property had in fact not been cleaned, to the extent that a blood-stained carpet remained on the living room floor of the Property. The Plaintiff had spent a substantial amount of money on the hardwood floors in the Property. Without the Plaintiff's permission, the Tenants had installed a light powder blue wall-to-wall carpet on the living room floor, attached at the edges with wooden frames nailed to the hardwood floors.

31.     In the middle of the living room was a pile of trash left behind, including paraphernalia the Tenants had used in connection with their illegal drug activities.

32.     In addition, the glass pane of the door leading to the terrace was broken and the air conditioner installed in the lower wall was pulled half-way out and not functioning.

33.     There was another pile of garbage in the middle of the kitchen floor. The top lock latches that secure the kitchen window were broken and the mini-blind hanging in the window was also broken.

7

34.    The kitchen appliances, including the stove, oven, refrigerator, microwave, and toaster over were disgustingly filthy. All of these appliances where in good clean working order when Plaintiff last visited the apartment in June 2005.

35.    The master bathroom was filthy and the towel rack had been broken.

36.    The master bedroom contained yet another pile of garbage in the middle of the floor. In addition, there were four large holes, approximately ½ inch in diameter, drilled into the wall.

37.    After viewing the condition of the Property, the potential tenant left the premises in disgust.

38.    Shortly, thereinafter, the Plaintiff paid a private contractor to clean the debris from the Property and restore the premises to a rentable condition.

39.    Despite the Plaintiff's efforts, the Property remains vacant to date.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST DEFENDANTS FOR THIRD PARTY BENEFICIARY
## BREACH OF CONTRACT

40.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 39 of this Verified Complaint, as if fully set forth herein at length.

41.    The Agreement entered into by and between Barclays Capital and D.J. Knight on or about March 2001, which establishes the terms of the property management agreement, is a binding and enforceable contract between the parties.

8

42.     Although Mr. Barrett did not execute the Contract, he was an intended third-party beneficiary of the Contract. The benefit to the Plaintiff was sufficiently immediate, rather than incidental, to indicate assumption by the contracting parties of a duty to compensate the Plaintiff if the benefit is lost.

43.     Defendants have breached the terms of the Agreement by failing to select responsible Tenants in accordance with the conditions of the Contract.

44.     In addition, Defendants failed to arrange for approval by the Board of the Tenants, as required by Article 7, Selling and Leasing of Units, of the By-Laws, thereby damaging the relationship between the Plaintiff and the Board.

45.     Defendants further breached the Contract in not providing Mr. Barrett with a copy of the Lease. This breach, coupled with Defendants' failure to provide information regarding the Tenants, deprived Mr. Barrett of any opportunity to make further inquiries regarding the Tenants.

46.     Defendants further breached the Contract by failing to undertake best efforts to market and rent the Property, resulting in a six (6) month vacancy period from June, 2005, to January, 2006.

47.     As a direct and proximate result of the Defendants' breach of the Contract, Plaintiff, as third party beneficiary to the Contract, has suffered damages, including but not limited to (a) damage to the Property, (b) pain and suffering Plaintiff was subjected to as a result of uncertainty surrounding the condition of the Property and viewing the Property after it had been damaged, and the knowledge that a violent crime had been committed at the Property, (c) six (6) months rent for the period during which the Property was vacant, and (d) for all

9

management fees and costs incurred by the Plaintiff.

48.    Plaintiff is therefore entitled to recover damages from Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of two-hundred thousand ($200,000.00) dollars plus an award of costs, disbursements and reasonable attorneys fees incurred in the prosecution of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST DEFENDANTS FOR
## PROMISSORY ESTOPPEL

49.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 48 of this Verified Complaint as if fully set forth herein.

50.    Pursuant to the letter dated March 26, 2001, and brochure forwarded to the Plaintiff, a copy of which is annexed hereto as Exhibit A, the Defendants clearly and unambiguously promised to the Plaintiff to assist the Plaintiff in the management of the Property during his overseas assignment and to utilize their best efforts to market and manage the Property.

51.    Plaintiff reasonably and justifiably relied upon the promise by Defendants in agreeing to give up management of the Property.

52.    Plaintiff acted to his detriment in doing so, in reliance upon the promises made to him.

53.    In addition, Defendants' failure to provide any information regarding the Tenants resulted in Defendants having exclusive control over the tenant selection process.

54.   As a result of the reasonable and foreseeable reliance by the Plaintiff upon the representations made by the Defendants, Plaintiff suffered damages to their Property.

55.   Defendants failed to undertake best efforts to market and rent the Property, resulting in a six (6) month vacancy period from June 2005 to January of 2006.

56.   As a direct and proximate result of the reasonable reliance of the Plaintiff upon Defendants' representations to the Plaintiff's detriment, Plaintiff has suffered damages, including but not limited to (a) damage to the Property, (b) pain and suffering Plaintiff was subjected to as a result of uncertainty surrounding the condition of the Property and viewing the Property after it had been damaged, and the knowledge that a violent crime had been committed at the Property, (c) six (6) months rent for the period during which the Property was vacant, and (d) for all management fees and costs incurred by the Plaintiff.

57.   Plaintiff is therefore entitled to recover damages from Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of two-hundred thousand ($200,000.00) dollars, plus an award of costs, disbursements and reasonable attorneys fees incurred in the prosecution of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST DEFENDANTS FOR NEGLIGENCE

58.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 57 as if fully set forth herein at length.

59.   Defendants had a duty to the Plaintiff under the Contract to exercise due care in the management of the Property, including but not limited to the selection of tenants and ensuring that all relevant Board regulations of the 2121 Shore Condominium were complied

with.

60.     Defendants breached their duty by failing to appropriately screen tenant applications to ensure that they would be suitable tenants and by failing to ensure compliance with all relevant Board regulations of the 2121 Shore Condominium.

61.     As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages, including but not limited to (a) damage to the Property, (b) pain and suffering Plaintiff was subjected to as a result of uncertainty surrounding the condition of the Property and viewing the Property after it had been damaged, and the knowledge that a violent crime had been committed at the Property, (c) six (6) months rent for the period during which the Property was vacant, and (d) for all management fees and costs incurred by the Plaintiff.

62.     Plaintiff is therefore entitled to recover damages from Defendants, jointly and severally, in an amount to be determined by a trier of fact, but believed to be in excess of two-hundred thousand ($200,000.00) dollars, plus an award of costs, disbursements and reasonable attorneys fees incurred in the prosecution of this action.

**WHEREFORE**, Plaintiff prays that judgment be entered in his favor and against the Defendants as follows:

(a)     On the First Cause of Action for an award of damages against Defendants, jointly and severally, for third party beneficiary breach of contract in an amount to be determined by the trier of fact, but believed to be in excess of two-hundred thousand ($200,000.00) dollars;

(b)     On the Second Cause of Action for an award of damages against the Defendants, jointly and severally, on the ground of promissory estoppel in an amount to be determined by the trier of fact, but believed to be in excess of two-hundred thousand ($200,000.00) dollars;

12

(c)    On the Third Cause of Action for an award of damages against Defendants, jointly and severally, for negligence in an amount to be determined by the trier of fact, but believed to be in excess of two-hundred thousand ($200,000.00) dollars;

Together with costs, disbursements and reasonable attorneys fees incurred in the prosecution of this action and such other and further relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
July 17, 2007

LAW OFFICES OF PAUL J GIACOMO, JR.

By: Rosario DeVito
Attorneys for Plaintiff
405 Lexington Avenue, 37th Floor
New York, NY  10174
212-486-0200

13

## VERIFICATION

STATE OF NEW YORK      )
                                            ) ss.:
COUNTY OF NEW YORK   )


NEIL J. BARRETT, being duly sworn deposes and says:

1.      I am a Defendant in this action and as such am fully familiar with the facts surrounding this proceeding.

2.      I have reviewed the foregoing VERIFIED COMPLAINT and know the contents thereof, and same are true to the best of my knowledge, information and belief except as to those matters which are alleged upon information and belief, and as to those matters I believe them to be true.


NEIL J. BARRETT


Sworn to before me this
17ᵗʰ day of July, 2007


Notary Public

ROSARIO DEVITO
Notary Public, State of New York
No. 02DE6111292
Qualified in Kings County
Commission Expires June 7, 2008

Exhibit A

Exhibit A

# DJKnight

March 26, 2001

Mr. Neil Barrett
2121 Shore Parkway
Apt. 7B
Brooklyn, NY 11214

Re:     Property Management

Dear Mr. Barrett:

Thank you for allowing DJ Knight Relocation to assist you in the management of your property during your overseas assignment. I have enclosed an outline detailing our responsibilities to you as your agent, and your responsibilities as "landlord".

Enclosed please find for your review and completion the following forms:

♦   The Home Management Kit
♦   The Management Contract
♦   The Homeowner Data Sheet
♦   The Home Inventory Form

We look forward to working with you and providing you with experienced, professional assistance with the management of your home.

Please do not hesitate to give me a call with any questions or concerns you may have throughout your assignment. I may be reached on 212.367.0447 (direct dial), by facsimile 212.463.0163 or by e-mail at sossi.gulmezian@djknight.com.

Very truly yours,

Sossi Gulmezian, CRP
Property Manager

Enclosures

# DJKnight

| Introduction |
| --- |

DJ Knight Relocation's mission as a full service Relocation and Real Estate Management organization, is to provide consistent client value through competitive levels of technology, quality and service, while maintaining high standards of integrity, ethical conduct and professionalism. We pursue strategies designed to foster long-term relationships with clients and design policies to promote teamwork and innovative thinking. Our passion for becoming a leader in our industry drives our commitment to total customer satisfaction by investing in the business, people and technology necessary to meet our customer's needs.

We believe all great companies are truly measured by the quality of their people. DJ Knight is proud to have career professionals who have worked in the industry most of their lifetime. Our service pledge exemplifies the steadfast commitment of our people, to customer service and satisfaction. Our quality performance management system and bonus incentive program, for outstanding performance is clear indications of total management support.

DJ Knight's headquarters are centrally located on Fifth Avenue with additional offices at 654 Madison Avenue at 60th Street and 295 West Thames Street in Battery Park City, providing 24 hour a day service, 7 days a week, to meet the needs of our clients. With trained specialists in our three New York locations, we are large enough to provide outstanding service demanded in today's competitive market and small enough to *truly* value each of our clients.

DJ Knight Relocation has set the standard in the relocation industry when it comes to the range of services we offer and the manner in which we deliver service. We have kept pace or exceeded customer demand because we continually listen to our customers through focus groups, surveys and service inquires to both the corporate client and the transferee.

# DJKnight

With over a decade of experience in the relocation and real estate environment, DJ Knight has a vast amount of expertise, pride and commitment, with the ability to comprehend the real needs of our clients. We look at ourselves as an extension of your business.

## Team Work of Professionals



# DJKnight

## Property Management

Today's mobile employees are faced with the high-pressure demands of the global marketplace. To maintain a competitive edge, corporations are also setting higher goals for success. DJ Knight's Property Management Program is adaptable to accommodate both the needs of the corporation and the employee. We recognize that the corporation must have a focused and motivated employee in the new assignment and that the employee must be confident with the management of their home, hundreds of miles away.

Regardless of the length of a business assignment, temporary or long-term, domestic or overseas, DJ Knight's National Property Management Program is offered as a viable option for the transferring employees who wish to retain their property or maintain a valuable, low cost, long term lease. Property Management is also offered as a cost-effective alternative to the home sale buy-out and/or loss-on-sale programs.

In addition to being a licensed real estate broker in the State of New York, DJ Knight Relocation has a nationwide network of real estate professionals and local independent brokers, in urban and suburban areas, specializing in property management services. Local brokers are selected based on present business relationships, industry experience and knowledge of select local area markets and professional memberships, such as the Employee Relocation Council (ERC) and the National Association of Realtors.

DJ Knight Relocation will utilize the employee's preferred agent or will select the most qualified local agent. DJ Knight continually monitors each agent's capabilities, personnel and communications. We use quality agents with numerous broker affiliations to service our customers on a national basis. With three growing locations in New York, DJ Knight has over 75 relocation brokers on staff to assist with the management of properties within the tri-state area.

When possible, the DJ Knight Property Management Coordinator performs all property inspections, completes the Property Management – Property Condition Report, takes pictures of the interior and exterior of the property and electronically remits the report and photographs to the homeowner. When a local area residential broker is utilized, the local broker performs the inspections, takes photographs and reports any defects or items requiring immediate attention. The DJ Knight Relocation Property Coordinator reviews the report and discusses any issues. The property owner is immediately advised of any concerns. The property coordinator will initiate service appraisals with the local residential broker. The local broker will be present to supervise any service matters.

# DJKnight

DJ Knight Relocation has developed general procedures for local area brokers to ensure professional standards are being maintained and that the homeowner's interests are being safeguarded.

The primary objective is to ensure that properties are effectively managed and maintained during the homeowner's absence. This objective is achieved through creative planning and marketing by the property management coordinator and the selected rental agent in the local community.

Centralized and effective communication is essential between all parties concerned, i.e., the rental broker, homeowner and the property management coordinator, to minimize the stress and maximize the return on the homeowner's investment.

# DJKnight

## Property Management Process



Corporate Client

Employee     DJ Knight Relocation

DJ Knight Relocation assigns a Property Management Coordinator to the employee, for the duration of the assignment. The coordinator becomes the property owner's advocate in the rental and management of the home.

| Property Owner | DJ Knight Relocation |
|---|---|
| *Complete Home Kit* | *Contact and Counsel Homeowner* |
| *Market Ready Home* | *Provide Home Management Kit* |
| | *Review/discuss Property's Rental Appeal* |
| | *Conduct Comparative Market Analysis* |
| | *Determine and Recommend Rental Value* |
| | *Contact Property Service Providers/Lenders* |
| | *Review Insurance* |
| | *Establish Lease Requirements* |
| | *List Property for Rent* |
| | *Homeowner Departure Inspection* |
| | *Screen Tenants, Credit Verification* |
| | *Negotiate Lease, Diplomatic Clause* |
| | *Collect Rent(s)* |
| | *Tenant Move-In Inspection* |
| | *Tenancy Management* |
| | *Coordinate Repairs/Refurbishing* |
| | *Full Financial Management* |
| | *Homeowner Return* |
| | *Home Watch for Vacant Dwellings* |
| | *Ongoing Communication* |

Whatever type of home, regardless of the location, DJ Knight Relocation's professional home management services will determine fair rental value, screen for the right tenant and monitor the condition of the home until your employee returns.

   

DJKnight Relocation – 101 Fifth Avenue – New York, NY 10003 – 212.463.9880

# DJKnight

## The First Step

### Authorization / Counseling

Authorization from the corporate contact is the first step to initiating Property Management services. A property management coordinator is assigned to the relocating family to manage every aspect of the program. The property management coordinator counsels the homeowner and provides a clear understanding of the employee's new role as an *absentee landlord.*

The property management coordinator's primary responsibility is to the homeowner. Throughout the overseas assignment the employee's involvement in the property management process will be minimal. Guidelines are established to free the employee of "landlord" responsibilities, empowering the property management coordinator to act in the owner's best interest. There may be times when the homeowner is called upon for further direction, as our goal is not to remove control from the homeowner, but to give them confidence that professionals are at work for them.

### Home Management Kit

The coordinator provides the employee with our *Home Management Kit.* The kit contains comprehensive information about the program, defining the employee's responsibility as landlord and DJ Knight's responsibility as agent. The *Home Inventory* form was designed to provide the homeowner with the opportunity to list and describe remaining personal property, its condition and to set parameters for maintenance and repairs and name preferred service vendors. This form enables the property management coordinator to effectively manage repair expenses and tenant-related matters and establish lease requirements.

### Rental Appeal

The next step is to determine the property's rental appeal to the public. Employees are counseled on steps, which would bring about the highest rental value possible. Basic tips from keeping the home clean and uncluttered to using bright and cheerful lighting, in addition to low cost, cosmetic repairs - such as minor painting and fixing that faucet that's been leaking since last spring.

# DJKnight

## Comparative Market Analysis

DJ Knight Relocation will conduct a comparative market analysis of the property and obtain a broker's price opinion. A local independent broker, appraiser or professional property manager performs a professional real estate inspection. The analysis will contrast existing, available rental properties and recently leased homes to arrive at an appropriate and fair-market rental value. This information is utilized to develop an effective marketing strategy for securing the optimum tenant for the property.

## Property Service Providers

The property management coordinator establishes contact with all property service providers, to include financial institutions, local tax authority, on-site building or property management firms (where applicable), utility companies (water, gas, electricity, fuel, sewer, etc.) and maintenance/service companies (landscaping, seasonal maintenance, alarm/security system, pest control, etc.).

DJ Knight Relocation contractually requires each homeowner to carry appropriate and adequate insurance coverage, owner/landlord-tenant policy, which provides fire and vandalism coverage in addition to the standard and customary bodily injury and property damage liability. We recommend a minimum landlord liability of $1,000,000 per occurrence, and require DJ Knight to be named as an insured with the owner along with documentation of coverage. We assist the employee with obtaining appropriate coverage or work with their existing insurance carrier to effect appropriate coverage to protect the interest of the owner.

## Listing Property for Rent

Upon receipt of the executed Property Management Contract, DJ Knight Relocation will list the property for rent. DJ Knight will utilize the employee's preferred agent or will select the most qualified local agent. DJ Knight continually monitors each agent's capabilities, personnel and communications. We use quality agents with numerous broker affiliations to service our customers on a national basis. As a licensed real estate broker in the State of New York, DJ Knight has over 75 relocation brokers on staff to assist with the management of properties within the tri-state area.

# DJKnight

## Managing the Home

### Tenant Selection

The property management coordinator will thoroughly review all prospective tenant applications. In addition to the standard and customary credit check, DJ Knight Relocation requires a letter of employment and income verification, business and personal references. Once the prospective tenant's financial capabilities are determined and references are verified, the property management coordinator will negotiate the terms and conditions of the lease. When possible, DJ Knight Relocation works to secure a two to three year lease with tenants to optimize rental fees. (*Please note that the homeowner has received and reviewed the lease. Terms and conditions have been predetermined and are in compliance with local and state regulations.*) An executed copy of the lease is provided to the homeowner. DJ Knight administers the lease to ensure compliance and to protect the employee as landlord.

### Home Inspections

DJ Knight Relocation conducts a variety of professional home inspections throughout the management process. Home inspections are mandatory to ensure that the property is being well maintained. The inspections also prevent minor occurrences from developing into major problems.

- Homeowner departure inspection
- Tenant move-in inspection
- Regular quarterly inspections

- As needed for major repairs
- Tenant move-out inspection
- Homeowner return inspection

Each inspection report is completed, in writing with full and complete photographic documentation, as necessary, encompassing the interior and exterior of the subject property. The written report and photographs are electronically dispatched to the property owner.

### Repairs / Refurbishing

Many homeowners learn to live with minor inconveniences, such as leaky faucets or noisy appliances, however, tenants expect everything to be in good working order. The property management coordinator administers ordinary repairs and maintenance that are necessary to ensure that the "landlord's" obligations under the lease are being fulfilled. Repair limits are pre-established and contractually agreed upon with the homeowner. Competitive estimates are obtained for necessary repairs. The owner's written approval is obtained for repairs exceeding the repair limit. Major or extraordinary repairs or reconstruction would be coordinated by DJ Knight Relocation, upon mutual consent and on terms agreed to by the owner and DJ Knight Relocation.

# DJKnight

## Financial Management

Routine property expenses are disbursed by DJ Knight Relocation, including, but not limited to mortgage, taxes, insurance, repairs and utility payments. The rental income is collected by DJ Knight Relocation in accordance with the terms of the lease. Untimely rent payments are subject to late fees. The property management coordinator monitors receipt of rent and enforces any penalties to the tenant.

DJ Knight Relocation provides a Property Management Statement of Operations report to the property owner, monthly and at year-end. The Statement of Operations reconciles and itemizes income and expenses. Detailed documentation is provided for all expenses. In the event the report shows a credit balance in favor of the owner, DJ Knight Relocation will transmit the amount directly to a bank designated by the owner. An invoice would be provided to the owner for any balances due to DJ Knight Relocation.

## Homeowner Return

Upon notification by the corporate contact or the property owner of the anticipated return date, the property management coordinator will notify tenants, arrange for the termination of the lease and conduct a tenant's move-out inspection. In the event of an early return, the property management coordinator would exercise the diplomatic clause, as stipulated in the lease. It is, therefore, crucial that the property management coordinator is provided with ample notice of the impending return date.

During the homeowner's absence and through regular property inspections, the property management coordinator recommends periodic refurbishing to offset the effects of normal wear and tear. Necessary repairs and refurbishing, as noted in the tenant move-out and owner move-in inspection, will be reviewed with the owner and performed prior to the return date.

The property management coordinator will arrange for a final reconciliation of any receipts and disbursements.

# DJKnight

## Property Management

## Home Kit

# DJKnight

## Property Management Program

The following will outline DJ Knight Relocation's responsibilities in marketing and managing your home.   Your responsibilities as absentee landlord are also provided.   Please review the enclosed material and complete the forms provided.

DJ Knight Relocation's Responsibilities in Marketing and Managing your home include the following:

> **Listing and Marketing the Property:**

- Determine and document the condition of your property upon your departure.

- Prepare a comparative market analysis, assess your financial needs, provide a rental value report and present a range of acceptable values.

- Select the most qualified local broker and arrange for the multiple listing of your property.

- Create marketing strategies to facilitate the rental of your home at the maximum value.

- Exclusively market the property in accordance with the listing agreement.

- Tenancy Management
  ⇒ Screen tenants
  ⇒ Credit checks
  ⇒ Employment verification
  ⇒ Negotiate and prepare lease (include Diplomatic Clause)

> **Managing the Property**

- Establish monthly maintenance expense limits and pay all bills, as you may direct, including, but not limited to the following:

  ❑ Mortgage and taxes

  ❑ Insurance, regardless of carrier

  ❑ Utility payments

  ❑ Association dues

  ❑ Special assessments

  ❑ Repairs and maintenance: competitive bids obtained, work monitored, bills paid.

- Establish minor and major repair limits.

# DJKnight

- Coordinate repairs and maintenance. Extraordinary repairs would require your expressed written consent.

- Establish a monthly rental payment schedule and collect rents.

- Collect and disperse all security deposit monies in accordance with state law.

- Pay all property invoices and maintain a separate management account for your property.

- Physically inspect your property on a quarterly basis after the initial vacancy inspection and forward-completed reports, to include photographs to you in your new location. Additional inspections will be performed as needed to maintain your property in good condition.

- Retain service phone numbers currently used to maintain your home.

- Coordinate lease extensions, market properties and ensure timely re-rentals.

- Coordinate repatriation needs including refurbishing, transfer of payments and security deposit return.

➤ **Financial Management of the Property**

- Monthly Statement of Operations
- Year End Statement of Operations

# DJKnight

## Property Management Program

The following will list your obligations as the property owner and absentee landlord:

- ➤ To place the home in a market-ready condition, e.g. clean home, shampoo carpets, establish a yard maintenance program, basic and cosmetic repairs that will increase your home's appeal to the public.

- ➤ Place all personal belongings in storage or have them shipped to the new location.

- ➤ In the event you elect to rent your property furnished, you will be required to provide a detailed, descriptive inventory of furnishings in your home, including values. DJ Knight Relocation can assist you to establish this inventory.

- ➤ Provide documents of housing costs, to include:

  - tax bills
  - mortgage information
  - any routine monthly fees
  - maintenance bills
  - home insurance policy

- ➤ Provide DJ Knight Relocation with the following:

  - a set of keys.
  - a list of recommended local repair people for any plumbing, electrical, heating or other system or appliance related problems.
  - contact name and number for the Condominium Association
  - mailing addresses for all requested payments
  - arrange for all appropriate bills to be forwarded to DJ Knight for timely payment
  - signed property management agreement authorizing DJ Knight to act as your agent

Exhibit

B

MAR-06-2006 14:08    DJ KNIGHT SIRVA RELO

A 495—"House lease, plain English format,
furnished or unfurnished. 11-78. O·

© 1979 BY JULIUS BLUMBERG, INC.,
PUBLISHER, NYC 10013

# LEASE AGREEMENT

The Landlord and Tenant agree to lease the Premises at the Rent and for the Term stated on these terms:

**LANDLORD:**                          **TENANT:**

NEIL BARRETT & JOSE FLORIDO            JUSTIN GOLDSTEIN
C/O SIRVA RELOCATION
101 FIFTH AVENUE, 3RD FL., NEW YORK, NY 10003    YAN LITVINOV
Address for Notices
Same as above

Premises: 2121 SHORE PARKWAY, BROOKLYN, NY 11214   APT 7B

| Lease date: January 15, 2006 19 | Term One Year beginning January 15, 2006 19 ending January 14, 2007 19 | Yearly Rent $15,000.00 Monthly Rent $1,250.00 Security $1,250.00 |
|---|---|---|

**1. Use**

The Premises must be used to live in only and for no other reason. Only a party signing this Lease, spouse and children of that party may use the Premises.

**2. Failure to give possession**

Landlord shall not be liable for failure to give Tenant possession of the Premises on the beginning date of the Term. Rent shall be payable as of the beginning of the Term unless Landlord is unable to give possession. In that case rent shall be payable when possession is available. Landlord will notify Tenant as to the date possession is available. The ending date of the Term will not change.

**3. Rent, added rent**

The rent payment for each month must be paid on the first day of that month at Landlord's Address above. Landlord need not give notice to pay the rent. Rent must be paid in full and no amount subtracted from it. The first month's rent is to be paid when Tenant signs this Lease. Tenant may be required to pay other charges to Landlord under the terms of this Lease. They are to be called "added rent." This added rent is payable as rent, together with the next monthly rent due. If Tenant fails to pay the added rent on time, Landlord shall have the same rights against Tenant as if it were a failure to pay rent.

The whole amount of rent is due and payable when this Lease is effective. Payment of rent in installments is for Tenant's convenience only. If Tenant defaults, Landlord may give notice to Tenant that Tenant may no longer pay rent in installments. The entire rent for the remaining part of the Term will then be due and payable.

**4. Notices**

Any bill, statement or notice must be in writing and delivered or mailed to the Tenant at the Premises and to the Landlord at the Address for Notices. It will be considered delivered on the day mailed or if not mailed, when left at the proper address. Any notice must be sent by certified mail. Landlord must send Tenant written notice if Landlord changes the Address for Notices.

**5. Security**

Tenant has given Security to Landlord in the amount stated above. If Tenant fully complies with all the terms of this Lease, Landlord will return the security after the Term ends. If Tenant does not fully comply with the terms of this Lease, Landlord may use the Security to pay amounts owed by Tenant, including damages. If Landlord sells the Premises, Landlord may give the Security to the buyer. Tenant will look only to the buyer for the return of the Security.

**6. Utilities and services**

Tenant must pay for the following utilities and services when billed: gas, water, electric, fuel, telephone, gardening, exterminating**

Maintenance service contracts shall be maintained, continued and paid for by Tenant. These charges will be added rent.

**7. Furnishings**

If the Premises are furnished, the furniture and other furnishings are accepted "as is." If an inventory is supplied each party shall have a signed copy.

**8. Repairs, alterations**

Tenant must keep, and at the end of the Term return the Premises and all appliances, equipment, furniture, furnishings and other personal property clean and in good order and repair. Tenant is not responsible for ordinary wear and damage by the elements. If Tenant defaults, Landlord has the right to make repairs and charge Tenant the cost. The cost will be added rent. Tenant must not alter, decorate, change or add to the Premises.

**9. Space "as is"**

Tenant has inspected the Premises. Tenant states that they are in good order and repair and takes the Premises "as is."

**10. Care of Premises, grounds**

Tenant shall keep the grounds neat and clean. Vehicles may be driven or parked only in driveways or in the garage.

**Add other utilities and services, if any.*

Tenant must give Landlord immediate notice in case of fire or other damage to the Premises. Landlord will have the right to repair the damage within a reasonable time or cancel this Lease. If Landlord repairs, Tenant shall pay rent only to the date of the fire or damage and shall start to pay rent again when the Premises become usable. Landlord may cancel the Lease by giving Tenant 3 days' written notice. The Term shall be over at the end of the third day and all rent shall be paid to the date of the damage.

**12. Liability**

Landlord is not liable for loss, expense or damage to any person or property unless it is due to Landlord's negligence. Tenant must pay for damages suffered and money spent by Landlord relating to any claim arising from any act or neglect of Tenant. Tenant is responsible for all acts of Tenant's family, employees, guests and invitees.

**13. Landlord's consent**

If Tenant requires Landlord's consent to any act and such consent is not given, Tenant's only right is to ask the Court to force Landlord to give consent. Tenant agrees not to make any claim against Landlord for money or subtract any sum from the rent because such consent was not given.

**14. Assignment, sublet**

Tenant may not sublet all or part of the Premises, or assign this Lease or permit any other person to use the Premises.

**15. Landlord may enter, keys, signs**

Landlord may at reasonable times, enter the Premises to examine, to make repairs or alterations, and to show it to possible buyers, lenders or tenants. Tenant must give to Landlord keys to all locks. Locks may not be changed or additional locks installed without Landlord's consent. Doors must be locked at all times. Windows must be locked when Tenant is out. Landlord may place the usual "For Rent" or "For Sale" signs upon the Premises.

**16. Subordination**

This Lease and Tenant's rights are subject and subordinate to all present and future (a) leases for the Premises or the land on which it stands, (b) mortgages on the leases or on the Premises or on the land, (c) agreements securing money paid or to be paid by the lender, under mortgages, and (d) terms, conditions, renewals, changes of any kind in and extensions of the mortgages or leases or Lender agreements. Tenant must promptly execute any certificate(s) that Landlord requests to show that this Lease is subject and subordinate.

**17. Condemnation**

If all of the Premises is taken or condemned by a legal authority, the Term, and Tenant's rights shall end as of the date the authority takes title to the Premises. If any part of the Premises is taken, Landlord may cancel this Lease on notice to Tenant setting forth a cancellation date not less than 30 days from the date of the notice. If the Lease is cancelled, Tenant must deliver the Premises to Landlord on the cancellation date together with all rent due to that date. The entire award for any taking belongs to Landlord. Tenant gives Landlord any interest Tenant might have to any part of the award and shall make no claim for the value of the remaining part of the Term.

**18. Compliance with authorities**

Tenant must, at Tenant's cost, promptly comply with all laws, orders, rules and directions of all governmental authorities, property owners associations, insurance carriers or Board of Fire Underwriters or similar group. Tenant may not do anything which may increase Landlord's insurance premiums. If Tenant does Tenant must pay the increase as added rent.

**19. Tenant's defaults and Landlord's remedies**

A. Landlord may give 5 days written notice to Tenant to correct any of the following defaults:

1. Failure to pay rent or added rent on time.
2. Improper assignment of the Lease, improper subletting all or part of the Premises, or allowing another to use the Premises.
3. Improper conduct by Tenant or other occupant of the Premises.
4. Failure to fully perform any other term in the Lease.

B. If Tenant fails to correct the defaults in section A within the 5 days, Landlord may cancel the Lease by giving Tenant a written 3 day notice stating the date the Term will end. On that date the Term and Tenant's rights in this Lease automatically end and Tenant must leave the Premises and give Landlord the keys. Tenant continues to be responsible for rent, expenses, damages and losses.

C. If the Lease is cancelled, or rent or added rent is not paid on time, or Tenant vacates the Premises, Landlord may in addition to other remedies take any of the following steps:

1. Enter the Premises and remove Tenant and any person or property;
2. Use dispossess, eviction or other lawsuit method to take back the Premises.

D. If the Lease is ended or Landlord takes back the Premises, rent and added rent for the unexpired Term becomes due and payable. Landlord may re-rent the Premises and anything in it for any Term. Landlord may re-rent for a lower rent and give allowances to the new tenant. Tenant shall be responsible for Landlord's cost of re-renting. Landlord's cost shall include the cost of repairs, decorations, broker's fees, attorney's fees, advertising and preparation for renting. Tenant shall continue to be responsible for rent, expenses, damages and losses. Any rent received from the re-renting shall be applied to the reduction of money Tenant owes. Tenant waives all rights to return to the Premises after possession is given to the Landlord by a Court.

**20. Bankruptcy**

If (1) Tenant assigns property for the benefit of creditors, (2) Tenant files a voluntary petition or an involuntary petition is filed against Tenant under any bankruptcy or insolvency law, or (3) a trustee or receiver of Tenant or Tenant's property is appointed, Landlord may give Tenant 30 days notice of cancellation of the Term of this Lease. If any of the above is not fully dismissed within the 30 days, the Term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses and expenses without offset.

**21. Correcting tenant's default**

If Tenant fails to correct a default after notice from Landlord, Landlord may correct it for Tenant at Tenant's expense. The sum Tenant must repay to Landlord will be added rent.

**22. Waiver of jury, counterclaim, set off**

Landlord and Tenant waive trial by a jury in any matter which comes up between the parties under or because of this Lease (except for a personal injury or property damage claim). In a proceeding to get possession of the Premises, Tenant shall not have the right to make a counterclaim or set off.

23. **Written instructions**

   Landlord has given or may give written instructions about the care and use of the appliances, equipment and other personal property on the Premises. Tenant must obey the instructions.

24. **Illegality**

   If any part of this Lease is not legal, the rest of the Lease will be unaffected.

25. **No waiver**

   Landlord's failure to enforce any terms of this Lease shall not prevent Landlord from enforcing such terms at a later time.

26. **Quiet enjoyment**

   Landlord agrees that if Tenant pays the rent and is not in default under this Lease, Tenant may peaceably and quietly have, hold and enjoy the Premises for the Term of this Lease.

27. **Successors**

   This Lease is binding on all parties who lawfully succeed to the rights or take the place of the Landlord or Tenant.

28. **Representations, changes in Lease**

   Tenant has read this Lease. All promises made by the Landlord are in this Lease. There are no others. This Lease may be changed only by an agreement in writing signed by and delivered to each party.

29. **Paragraph headings**

   The Paragraph headings are for convenience only.

30. **Effective date**

   This Lease is effective when Landlord delivers to Tenant a copy signed by all parties.

31. **Late Fees:**

   Rent is due on the 1st of every month.  Rent received after the 5th day of the month is subject to a 5% additional fee.  Return check fee are $40.00 each.

**Signatures**        The parties have entered into this Lease on the date first above stated.

LANDLORD:                              TENANT:

SIERA RELOCATION AS AGENT FOR:        JUSTIN GOLDSTEIN
NEIL BARRETT & JOSE FLORIDO
WITNESS:

                                      YAN LITVINOV

---

**EPA and HUD Lead Paint Regulations, Effective September 6, 1996**[1]

Landlords must disclose known lead-based paint and lead-based paint hazards of pre-1978 housing to tenants.[2] Use the following BLUMBERG LAW PRODUCTS (800 LAW MART) to comply:

   3140  Lead Paint Information Booklet      3141  Lead Paint Lease Disclosure Form

[1]December 6, 1996 for owners of 1 to 4 residential dwellings.
[2]Leases for less than 100 days, 0-bedroom units, elderly and handicapped housing (unless children live there) and housing found to be lead-free by a certified inspector are excluded.

Exhibit C

**Exhibit C**

# AMS

Advanced Management Services

26 Court Street
Suite 804
Brooklyn, NY 11242
Phone: (718) 852-7539
Fax: (718) 852-5312

February 24, 2006

N. Barrett & J. Florido
c/o S. Gulmezian
101 Fifth Avenue
New York, NY 11214

Re: Safety and Security
      Fire Escapes of 2121 Shore Parkway

Dear Unit Owner,
It has been brought to our attention that certain individuals said to be from unit 7B at 2121 Shore Parkway have been using the fire escapes as a means of gaining access to their apartments. This is a very serious issue as well as a bad practice for several reasons as such the building will be taking several steps to eliminate this practice.

The use of fire escapes except in the case of an emergency is a violation of the New York City Fire Code. This practice can bring attention to the building by criminal elements who may try to duplicate this in an effort to gain access to the building and can also become a safety issue.

In a response to this problem the building has re positioned the surveillance cameras to cover the fire escapes and has instituted a fine schedule as follows to be imposed on any individual who is seen violating this rule. This fine will be levied against the unit and will be placed on the unit owner's account. Additionally residents have been advised to notify the Police who are authorized to place under arrest persons trespassing on the property of 2121 Shore Parkway.

First offense: $75.00
Second offense: $150.00
Third offense: $300.00

Additionally residents have been advised to notify the Police who are authorized to place under arrest persons trespassing on the property of 2121 Shore Parkway.

Please feel free to call me if you would like to discuss this matter further. I can be reached at the above Number.

Best regards,


William Honan
Associate Property Manager

Exhibit D

**Exhibit D**



# SCHECHTER & BRUCKER, P.C.
### —— ATTORNEYS AT LAW ——

ANDREW P. BRUCKER*
HOWARD SCHECHTER
DAVID H. OSTWALD

KENNETH H. AMORELLO
LEWIS C. TAISHOFF
THOMAS V. JUNEAU, JR.†
STEPHEN M. LASSER
JOSE A. SALADIN

* LL.M. (Taxation)
† N.Y. and Conn. Bars

350 FIFTH AVENUE
EMPIRE STATE BUILDING
SUITE 4510
NEW YORK, NY 10118

TEL: (212) 244-6600
FAX: (212) 244-6784
www.sblaw.com

March 20, 2006

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**RECEIPT NUMBER** 7160 3901 9842 6862 3106

Mr. Neil Barrett
Mr. Juan Florido
2121 Shore Parkway, #7B
Brooklyn, NY 11214

Re:     The 2121 Shore Condominum
        Apartment:  7B
        Premises:  2121 Shore Parkway
                    Brooklyn, NY 11214
        NOTICE OF ELECTION TO VOID LEASE
        Our File No.: 22121-000

Dear Mr. Barrett and Mr. Florido:

We are attorneys for The 2121 Shore Condominum. We have been advised that you have leased the above-referenced unit without complying with the requirements of Article 7 of the By-laws of the condominium. Pursuant to Section 7.1 of the By-laws, any purported lease "consummated in default of the applicable terms hereof shall be voidable at the sole election of the Condominium Board."

You are hereby advised that the Board elects to void your leasing of the apartment on the basis that you neither gave notice of the intended leasing nor obtained a waiver of the Condominium's right of first refusal before putting your lessee(s) into possession. Additionally, the Board considers the individuals who are residing in the apartment to be undesirable and will exercise the right given to it by Section 7.1 "to institute legal proceedings

F:\90\22121d.90

# SCHECHTER & BRUCKER, P.C.

Mr. Neil Barrett
Mr. Juan Florido
March 20, 2006
Page 2

to eject the purported tenant" in your name unless you take immediate steps to permanently remove them from the premises.

Please also note that under Section 7.1 of the By-laws, you will be held liable for all costs and expenses paid or incurred in connection with such proceedings, including, without limitation, reasonable attorneys' fees and disbursements and court costs.

Please take immediate steps to comply and keep Lynn Tiews or William Honan at Advanced Management Services apprized of the steps you are taking and your progress.

Very truly yours,

Howard Schechter

cc:    Board of Managers
       Management
       Michelle Couperthwith, Director of Relocation
            DJK Residentials **BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED
            RECEIPT NUMBER   7160 3901 9842 6862 3113**

F:\90\22121d.90

Exhibit
E

Message                                                                 Page 1 of 3

## Paul J. Giacomo, Jr.

**From:**    Neil.Barrett@barclayscapital.com
**Sent:**    Wednesday, April 05, 2006 3:34 AM
**To:**      Julia.Velez@sirva.com
**Cc:**      michellec@sirva.com; jose_florido@yahoo.com; neil_j_barrett@yahoo.com; pjg@giacomolaw.com
**Subject:** RE: 2121 Shore Pkwy apt 7B

Julia,

It will be a great relief when this person/s are out of the apartment. I think the locks should be changed and maybe from the sounds of it that the apartment might need a good clean. We had the apartment completely painted, bathrooms re-grouted and thoroughly cleaned in July when our last tenant moved out.

You should check the apartment with the inventory list that was given to you awhile ago.

So, if you are going to give back the security deposit if everything is in good order I guess they have paid up the rent until April 1, 2006 ?

As far as Carmine is concerned he's acted as a "Realtor" and he should not have anything to do with renting the apartment in the future. According to our contract, as a Barclay Capital employee the lease and Condo approval is the responsibility of DJ Knight/Sirva.

So now what happens with the renting of the apartment ?

I await your reply.

Regards,

Neil Barrett

> -----Original Message-----
> **From:** Julia Velez [mailto:Julia.Velez@sirva.com]
> **Sent:** 04 April 2006 21:35
> **To:** Barrett, Neil: Markets (LDN)
> **Cc:** Michelle Couperthwaite
> **Subject:** RE: 2121 Shore Pkwy apt 7B
>
> Neil & Jose,
>
> The tenant were suppose to move out on April 1st. When my co-worker did the inspection the apartment was in good condition and the tenants were in the process of moving. Most of their belongs were already out of the apartment.
>
> I left a message for Justin to return the keys to me at the office. Waiting to hear from him.
>
> Once I receive the keys, I will be visiting the apartment again to make sure that all is in order. I will also notify the Board that the apartment is now vacate.
>
> In regards to the Sec Dep, Justing hasn't yet requested for it to be refunded, but once I do the move-out inspection and if they is no damage to the apartment, I will refund it to the tenants.

4/5/2006

Message     Page 2 of 3

I would like your approval not to use Carmine for the re-rental of the apartment. He did not follow the Broad's procedures with this last rental which he should have been aware of. What are your thoughts on this.

*Regards,*

*Julia Velez*
*Property Manager*
*SIRVA Relocation*
*101 Fifth Avenue*
*New York, NY 10003*

*Email:  <mailto:julia.velez@sirva.com>*
*Direct:  (212) 367.0469*
*Main:  (212) 463.9880*
*Fax:  (212) 463.0163*

*http://www.sirva.com*

-----Original Message-----
**From:** Neil.Barrett@barclayscapital.com [mailto:Neil.Barrett@barclayscapital.com]
**Sent:** Tuesday, April 04, 2006 6:57 AM
**To:** Michelle Couperthwaite; Julia Velez
**Cc:** pjg@giacomolaw.com; neil_j_barrett@yahoo.com; jose_florido@yahoo.com
**Subject:** 2121 Shore Pkwy apt 7B

Michelle - Julia,

It is now April 4th 2006 and we have not heard anything about the tenants who were suppose to be moving out April 1.

The last email from Julia was one forwarded from the management company. We would like to know what has been going on with regards to the tenants and the property... Is the apartment empty and in the shape that it was when the tenants moved in? I am concerned by the lack of information that we have received. We do not know what transpired or..... Is the apartment ready to be rented, what happened to the deposit, what is happening with the Condo Board...

I await a reply.

Regards,

Neil Barrett
Jose Florido

--------------------------------------------------------------------
For more information about Barclays Capital, please
visit our web site at http://www.barcap.com.

Internet communications are not secure and therefore the Barclays
Group does not accept legal responsibility for the contents of this
message. Although the Barclays Group operates anti-virus programmes,
it does not accept responsibility for any damage whatsoever that is
caused by viruses being passed. Any views or opinions presented are
solely those of the author and do not necessarily represent those of the
Barclays Group. Replies to this email may be monitored by the Barclays
Group for operational or business reasons.

----------------------------------------------------------------------

52902 © 1995 JULIUS BLUMBERG, INC..

1. Place cover this side up on top of first page of document. Staple as indicated.

2. Lift bottom of cover up and over top, folding on top score line

3. Fold cover down behind papers on remaining score line.

Note: Address area on back middle panel appears in window in a No. 10 envelope

**STATE OF NEW YORK, COUNTY OF**      ss.:

I, the undersigned, an attorney admitted to practice in the courts of New York State,

☐ **Certification By Attorney**    certify that the within

has been compared by me with the original and found to be a true and complete copy.

☐ **Attorney's Affirmation**    state that I am

the attorney(s) of record for        in the within

action; I have read the foregoing        and know the contents thereof;

the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe it to be true. The reason this verification is made by me and not by

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

I affirm that the foregoing statements are true, under the penalties of perjury.

Dated:

The name signed must be printed beneath

**STATE OF NEW YORK, COUNTY OF**      ss.:

I, the undersigned, being duly sworn, depose and say: I am

☐ **Individual Verification**    in the action; I have read the foregoing

and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

☐ **Corporate Verification**    the        of

a

corporation and a party in the within action; I have read the foregoing and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. This verification is made by me because the above party is a corporation and I am an officer thereof.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

Sworn to before me on

The name signed must be printed beneath

**STATE OF NEW YORK, COUNTY OF**      ss.:     (If more than one box is checked—indicate after names type of service used.)

I, the undersigned, being sworn, say: I am not a party to the action, am over 18 years of age and reside at

On        I served the within

☐ **Service By Mail**    by mailing a copy to each of the following persons at the last known address set forth after each name below.

☐ **Personal Service on Individual**    by delivering a true copy of each personally to each person named below at the address indicated. I knew each person served to be the person mentioned and described in said papers as *a party therein:*

☐ **Service by Electronic Means**    by transmitting a copy to the following persons by ☐ FAX at the telephone number set forth after each name below ☐ E-MAIL at the E-Mail address set forth after each name below, which was designated by the attorney for such purpose, and by mailing a copy to the address set forth after each name.

☐ **Overnight Delivery Service**    by dispatching a copy by overnight delivery to each of the following persons at the last known address set forth after each name below.

Sworn to before me on

The name signed must be printed beneath

SUPREME   COURT
STATE OF NEW YORK, COUNTY OF   NEW YORK        Index No.          Year

NEIL J. BARRETT,

                                                    Plaintiff,

                        -against-

D.J. KNIGHT & COMPANY, LTD.
D/B/A DJK, D/B/A DJK RESIDENTIAL
D/B/A DJ KNIGHT RELOCATION and
SIRVA RELOCATION LLC,

                                                    Defendants.

## SUMMONS AND VERIFIED COMPLAINT

## THE LAW OFFICES OF PAUL J. GIACOMO, JR.

*Attorney(s) for*

*Office and Post Office Address, Telephone*

Plaintiff

405 LEXINGTON AVENUE
37TH FLOOR
NEW YORK, NEW YORK 10174
212-486-0200

To

Signature (Rule 130-1.1-a)

_____

Print name beneath

Service of a copy of the within is hereby admitted.

**Attorney(s) for**

Dated: _____

---

**PLEASE TAKE NOTICE:**

☐ NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order                                    of which the within is a true copy
will be presented for settlement to the HON.        one of the judges of the
within named Court, at

on                          at              M.

Dated,

                            Yours, etc.

JS 44C/SDNY
REV. 12/2005

JUDGE KAPLAN   CIVIL COVER SHEET   07 CIV 7945

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS Neil J. Barrett | DEFENDANTS D.J. Knight & Company, Ltd. d/b/a DJK d/b/a DJK Residential d/b/a DJ Knight Relocation and SIRVA Relocation LLC |
|---|---|

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Rosario DeVito, The Law Offices of Paul J. Giacomo, Jr., 405 Lexington Ave. 37th Fl. NY, NY 10174 (212) 486-0200 | ATTORNEYS (IF KNOWN) Karen M. Berberich, Dombroff Gilmore Jaques & French, 40 Broad Street, Ste 701, NY, NY 10004 (212) 742-8450 |
|---|---|

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

This notice is filed pursuant to 28 U.S.C. §1446(b) and FRCP Rule 81(c) and is being removed pursuant to 28 U.S.C. § 1332 (a). This action is a civil contract action for alleged breach of contract arising out of the management of property.

SEP 10 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Has this or a similar case been previously filed in SDNY at any time? No [x]   Yes? [ ]   Judge Previously Assigned

If yes, was this case Vol[ ]   Invol. [ ]   Dismissed. No [ ]   Yes [ ]   If yes, give date _____   & Case No. _____

(PLACE AN [x] IN ONE BOX ONLY)                    NATURE OF SUIT

ACTIONS UNDER STATUTES

### TORTS

**CONTRACT**

[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[x] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**

[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**

[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**

[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**

[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**

[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**

[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**

[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**

[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**REAL PROPERTY**

[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**

[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**

[ ] 510 MOTIONS TO VACATE SENTENCE
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

Check if demanded in complaint: _____

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $_____   OTHER _____   JUDGE _____   DOCKET NUMBER_____

Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

**ORIGIN**

(PLACE AN x IN ONE BOX ONLY)

[ ] 1 Original Proceeding
[X] 2a. Removed from State Court
[ ] 2b. Removed from State Court AND at least one party is a pro se litigant
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from (Specify District)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judge Judgment

(PLACE AN x IN ONE BOX ONLY)       **BASIS OF JURISDICTION**       **IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441)**

[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [ ] 3 FEDERAL QUESTION (U.S. NOT A PARTY)   [X] 4 DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [X] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [X] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Neil Barrett
Basement Flat
London SW5 9NW
United Kingdom

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

SIRVA Relocation LLC
6070 Parkland Boulevard
Mayfield Heights, Ohio 44124

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS   [X] FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE
9/10/07
RECEIPT #

SIGNATURE OF ATTORNEY OF RECORD

_[signature]_

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[x] YES (DATE ADMITTED Mo. March Yr. 2001 )
Attorney Bar Code #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)